PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 11-2258

ERASMO ANIBAL MARTINEZ,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES,

Respondent

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Margaret Reichenberg
(No. A042-439-642)

Argued April 11, 2012

Before: MCKEE, Chief Judge, HARDIMAN, Circuit Judge
and JONES, II,* District Judge

(Opinion filed: September 6, 2012)

_____

* Honorable C. Darnell Jones, II, District Judge for the United
States District Court for the Eastern District of Pennsylvania,
sitting by designation.

Raquiba Huq
Claudine Langrin
Timothy Block
Shifra Rubin
Melville D. Miller, Jr.
Whitney Elliott, Esq. **[ARGUED]**
Legal Services of New Jersey
100 Metroplex Drive, Suite 402
P.O. Box 1357
Edison, New Jersey 08818-1357

*Counsel for Petitioner*

Tony West, Esq.
David V. Bernal, Esq.
Stuart S. Nickum. Esq. **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC  20044

*Counsel for Respondent*

OPINION OF THE COURT

JONES, II, *District Judge*.

Section 212(h) of the Immigration and Nationality Act ("INA") expressly bars from status adjustment a non-citizen who has "previously been admitted to the United States as an alien lawfully admitted for permanent residence" but later is convicted of an aggravated felony.  8 U.S.C. § 82(h)(1)(C)(2). This appeal presents a question of first impression in this Circuit: whether someone who was accorded the designation of "lawfully admitted for permanent residence" status upon physical entry into the United States, but who in fact did not substantively qualify for such designated status, is still barred from Section 212(h) relief.  We determine that "admission" as

an lawful permanent resident ("LPR") in Section 212(h) refers to a procedurally regular entry, not a substantively compliant one. As we conclude here that the prohibition holds, we will deny the petition for review.

## I. Background

Petitioner Erasmo Anibal Martinez, a native of Nicaragua, entered the United States without inspection in 1985. In October 1989, he married a United States citizen (who bore his daughter later that year), and began the process of adjusting his status to LPR. On September 15, 1990, Martinez was arrested and later charged in a four-count indictment before the Superior Court of New Jersey. On December 7, 1990, he pleaded guilty to sexual assault under N.J. Stat. § 2C:14-2b, admitting that he had touched the vaginal area of his then-eight-year-old step-daughter.

In early 1991, after his plea but prior to his sentencing, Martinez travelled to Nicaragua to complete the immigrant visa application process. The United States consulate in Nicaragua approved his application on March 5, 1991. Martinez was admitted to the United States as a permanent resident the following day. On March 22, 1991, two weeks after he obtained permanent resident status, he was sentenced to four years in prison. Martinez was released on parole on November 9, 1992.

The Department of Homeland Security ("DHS") initiated removal proceedings against Martinez in August 2009, and Martinez ultimately conceded that he was removable for having been convicted of an aggravated felony for sexual abuse of a minor. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii) (setting forth grounds for removability), 1101(a)(43)(A) (defining aggravated felony). Martinez argued, however, that he was eligible for adjustment of status under former INA Section 212(c), which waived the bar against status adjustment for convicted aggravated felons in the case of certain LPRs.[1] DHS responded that Martinez was

---

[1] Waiver under former Section 212(c) required that an alien have (1) at least seven years unrelinquished residence in the United States; (2) at least five years as an LPR; and (3) not

not eligible for a Section 212(c) waiver because he had not in fact been "lawfully admitted for permanent residence" (an eligibility requirement under Section 212(c)): he had failed to disclose his prior arrest and guilty plea on his original application for permanent resident status. The Immigration Judge ("IJ") agreed.

In response, Martinez sought instead to readjust his status under INA Section 212(h)(1)(A), which allows for adjustment of alien status by the spouse, parent, son or daughter of a United States citizen where denial of such adjustment would constitute extreme hardship on either the alien or the citizen. Section 212(h), however, expressly bars from relief a non-citizen who has "previously been admitted to the United States as an alien lawfully admitted for permanent residence" but "since the date of admission . . . has been convicted of an aggravated felony . . . ." 8 U.S.C. § 1182(h)(1)(C)(2). With some creativity, Martinez argued that this bar could not apply to him because he was actually inadmissible at the time he was granted LPR status due to his failure to disclose his prior arrest and guilty plea at the time he entered the United States as an LPR.[2]

_____

served more than five years in prison after final conviction for an offense.

[2] As the Board of Immigration Appeals points out, Martinez's conviction did not render him deportable under Section 237(a)(2)(A)(i) of the INA, 8 U.S.C. § 1227(a)(2)(A)(i), because the offense resulting in the conviction was committed before, rather than after, Martinez began adjusting his status in the United States. Appendix for Petitioner ("Pet. App.") 7a (citing *Matter of Alyazji*, 25 I & N Dec. 397 (BIA 2011)). At the very least, however, it was Martinez's failure to disclose his arrest and guilty plea that rendered him inadmissible at the time he entered, because of "'fraud or willfully misrepresenting a material fact.'" *Hing Sum v. Holder*, 602 F.3d 1092, 1094 n.1 (9th Cir. 2010) (record did not establish aggravated felony conviction but did establish arrest for said felony) (quoting 8 U.S.C. § 1182(a)(6)(C)(i)); *see Mwongera v. I.N.S.*, 187 F.3d 323, 330 (3d Cir. 1999) ("knowledge of the falsity of the representation will suffice" to establish inadmissibility). As the Board notes, Martinez conceded before the IJ that his conviction involved a crime of moral

The IJ rejected Martinez's argument. While substantive satisfaction of LPR status was an underlying requirement for Section 212(c) waiver, the IJ found that the absence of such satisfaction did not equate to waiver of the Section 212(h) bar. Specifically, the IJ held that the Board of Immigration Appeals' ("BIA") decision in *In re Ayala-Arevalo*, 22 I & N Dec. 398 (BIA 1998), controlled and Martinez was statutorily ineligible for Section 212(h) relief.

Martinez timely appealed to the BIA, arguing that he was eligible for Section 212(c) relief because the IJ erred in concluding that Martinez had never been "lawfully admitted for permanent residence." In the alternative, Martinez contended that if the BIA determined that he had never been "lawfully admitted for permanent residence," then it should find him eligible for a Section 212(h) waiver, thus overruling *Ayala*.

The BIA remained similarly unpersuaded. According to the Board, Martinez was ineligible for 212(c) relief because he had "never been lawfully admitted for permanent residence," but he was also ineligible for 212(h) relief: "although [Martinez] has never been lawfully admitted for permanent residence" in a substantive manner, he had "previously been 'admitted,' even if that admission has subsequently been 'determined to have been . . . in violation of law.'" Pet. App. 8a (quoting *Ayala* at 401 (ellipsis in the original)). The Board concluded that *Ayala* compelled a finding that Martinez's aggravated felony conviction rendered him ineligible for a waiver of inadmissibility under Section 212(h), and the BIA declined to overturn *Ayala*.

Martinez then timely filed a petition for review of the Section 212(h) waiver question only, and later moved for a

turpitude; the IJ determined that such acknowledgement rendered him inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I) (any alien "convicted of, or who admits having committed . . . a crime involving moral turpitude . . . is inadmissible."). Pet. App. 7a & n.2.

stay of removal, which was granted.[3] The Newark Immigration Court had jurisdiction under 8 C.F.R. § 1003.14(a) and the BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3). As Martinez seeks review of a final order of removal, this Court has jurisdiction under 8 U.S.C. § 1252(a).

## II. Standard of Review

When, as here, the BIA affirms an IJ's decision and adds analysis of its own, we review both the IJ's and the BIA's decisions. *Dia v. Ashcroft*, 353 F.3d 228, 243 (3d Cir. 2003) (en banc); *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). We review *de novo* questions of law, such as the proper construction of Section 212(h). *Fadiga v. Att'y Gen.*, 488 F.3d 142, 153 (3d Cir. 2007). Using all "traditional tools of statutory construction," we must determine "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 843 n.9 (1984). "If Congress has done so, [our] inquiry is at an end; [we] 'must give effect to the unambiguously expressed intent of Congress.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (quoting *Chevron*, 467 U.S. at 843). If, however, the statute is "silent or ambiguous with respect to the specific issue," we must assess "whether the agency's answer is based on a permissible construction." *Chevron*, 467 U.S. at 843. If so, then we must defer to that construction. *Id.* at 845.

Unsurprisingly, Respondent urges us to apply *Chevron* deference here. Martinez, however, argues on two grounds that *Chevron* does not apply. First, Martinez claims that no statutory ambiguity exists, such that Congress clearly intended for the Section 212(h) waiver to apply to an individual like Martinez. Second, Martinez claims that even if such ambiguity does exist, it is for this Court to resolve without deference to the BIA's statutory construction, which would be due only if the BIA itself had interpreted Section 212(h). According to Martinez, in *Ayala* the BIA explicitly

---

[3] While the BIA addressed Martinez's ineligibility for several different waivers of inadmissibility for which Martinez had applied, here Martinez appeals only the Section 212(h) waiver issue.

6

found that Section 212(h) "clearly precluded" waiver applicants such as himself; thus the BIA did not reach its own construction of the statute, and therefore this Court should not defer to the BIA's application of Section 212(h).

Martinez cites exclusively to caselaw from the D.C. Circuit and the Seventh Circuit in support of his argument against *Chevron* deference. *See* Reply Brief for Petitioner ("Pet. Reply") at 7-8 (citing *Arizona v. Thompson*, 281 F.3d 248, 254 (D.C. Cir. 2002); *Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin.*, 471 F.3d 1350, 1354 (D.C. Cir. 2006); *Escobar Barraza v. Mukasey*, 519 F.3d 388, 391 (7th Cir. 2008); *U.S. Postal Service v. Postal Regulatory Comm'n*, 640 F.3d 1263, 1268 (D.C. Cir. 2011)). The Third Circuit has not yet addressed the question of whether such deference is "only appropriate when the agency has exercised its *own* judgment, not when it believes that [its] interpretation is compelled by Congress." *Thompson*, 281 F.3d at 254 (internal quotation marks and citations omitted) (emphasis in original).[4] For the reasons set forth below, however, we find Section 212(h)'s statutory language free of ambiguity—

---

[4] While not necessarily reaching the same ultimate conclusions, the Fourth, Fifth, Ninth and Eleventh Circuits have declined to accord explicit *Chevron* deference under similar circumstances. *See Bracamontes v. Holder*, 675 F.3d 380, 386 (4th Cir. 2012) ("[T]he BIA's interpretation of Section 212(h) in the instant case fails the first prong of the Chevron test…the statutory bar to a waiver of inadmissibility is not ambiguous with respect to whom it applies."); *Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008) ("[F]or the § 212(h) bar to apply: when the alien is granted permission, after inspection, to enter the United States, he must then be admitted as [a lawful permanent resident]. Accordingly, we find no basis for the statutory language's being ambiguous."); *Hing Sum*, 602 F.3d at 1099 ("We need not resort to legislative history because the statute is not ambiguous."); *Lanier v. U.S. Att'y Gen.*, 631 F.3d 1363, 1367 (11th Cir. 2011); (Based on [Section 212(h)'s] unambiguous text, we find that the statutory bar to relief does not apply to those persons who . . . adjusted to lawful permanent resident status while already living in the United States.").

though not in the manner Martinez champions—and thus we need not accord *Chevron* deference.

### III. Analysis
#### A. Statutory Language

Section 212(h) provides one of the few avenues of relief for non-citizens who would otherwise be eligible to adjust their immigration status but for certain grounds of inadmissibility, such as moral turpitude. In 1996, however, as part of a larger immigration reform initiative, Congress amended the statute to render fewer LPRs eligible for the Section 212(h) waiver on aggravated felonies. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, div. C, §348, 110 Stat. 3009 (amending 8 U.S.C. §1182(h)). The statute currently provides that "[n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . ." 8 U.S.C. § 1182(h)(1)(C)(2).[5]

---

[5] Prior to the 1996 amendment, the INA assessed status on the basis of "entry" as opposed to "admission." *See* 8 U.S.C. § 1101(a)(13) (1994) (defining "entry" as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise"). Non-citizens who had "entered" the United States were processed for deportation; those who had not "entered" were sent into exclusion proceedings. Charles Gordon, Stanley Mailman & Stephen Yale-Loehr, 1-1 IMMIGRATION LAW AND PROCEDURE § 1.03(2)(b) (2010). As a result, "non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings," while non-citizens who actually presented themselves to authorities for inspection were restrained by "more summary exclusion proceedings." *Hing Sum*, 602 F. 3d at 1100. To remedy this unintended and undesirable consequence, the IIRIRA substituted "admission" for "entry," and replaced deportation and exclusion proceedings with the more general "removal" proceeding.

Thus, as our sister court in the Ninth Circuit has explained so succinctly, Section 212(h) waivers are "available to non-LPRs convicted of aggravated felonies, or non-citizens who were convicted of an aggravated felony prior to their admission as LPRs, but they are unavailable to non-citizens who were convicted of an aggravated felony *after* their admission as LPRs." *Hing Sum*, 602 F.3d at 1095 (emphasis in original) (citing *In re Michel*, 21 I & N Dec. 1101, 1104 (BIA 1998) (en banc) and *United States v. Arrieta*, 224 F.3d 1076, 1080-81 & n.2 (9th Cir. 2000)). As outlined above, Martinez's appeal rests on whether, despite his arrest and guilty plea prior to adjusting to LPR status, he is eligible to seek Section 212(h) relief. As the BIA opinion notes, the IJ found that Martinez was "previously admitted . . . as an alien lawfully admitted for permanent residence" within the meaning of Section 212(h), that he was subsequently convicted for an aggravated felony, and that he was therefore barred from pursuing Section 212(h) relief. Pet. App. 116a.[6] Martinez contends, however, that precisely *because* he

----

[6] Since the INA's 1996 amendment, the term "conviction" means:

> with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, ***and*** (ii) the judge has ordered some form of punishment, penalty or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A) (emphasis added). Martinez pleaded guilty on December 7, 1990 but was not sentenced until March 22, 1991—two weeks after his relevant entry into the United States on March 6, 1991. Accordingly, as the BIA found, he was not "convicted" of an aggravated felony until after his admission. *See* Pet. App. 6a (citing *Perez v. Elwood*, 294 F.3d 552, 562 (3d Cir. 2002) (alien's "conviction" occurred not when he was tried and found guilty by jury but on date sentence was imposed))). In any event, Martinez does not contest that he was "convicted" subsequent to his March 1991 admission, despite tendering his guilty plea prior to his admission, and thus waives any potential argument on that ground.

attained LPR status through fraud or misrepresentation, he was never lawfully admitted and thus Section 212(h) cannot bar his status adjustment now.

### B.  Application

The INA defines "admitted" as the "lawful entry of the alien into the United States after inspection and authorization by an immigration officer," 8 U.S.C. § 1101(a)(13)(A)—in other words, a procedurally regular admission into the United States, not necessarily a substantively lawful one.  The term "lawfully admitted for permanent residence," in turn, is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20).

Thus, an alien permitted to enter the United States by an immigration officer has been "admitted" even if he did not meet the substantive legal requirements for admission at that time, although he was not "lawfully admitted for permanent residence" under the INA unless he were substantively in compliance with those admission requirements.  *See Emokah v. Mukasey*, 523 F.3d 110, 118 (2d Cir. 2008) (admission obtained by using fraudulent visa still constitutes "admission"); *Borrego v. Mukasey*, 539 F.3d 689, 691-93 (same); *compare to Matter of Koloamatangi*, 23 I & N Dec. 548, 551-52 (BIA 2003) (LPR who obtained status by fraudulent marriage to United States citizen was not "lawfully admitted").

The Third Circuit has previously deferred to the BIA's interpretation that "an alien whose status has been adjusted to lawful permanent resident but who is subsequently determined in an immigration proceeding to have originally been ineligible for that status has not been 'lawfully admitted for permanent residence,'" and that such individuals are therefore ineligible for waivers of inadmissibility. *Gallimore v. Att'y Gen.*, 619 F.3d 216, 224-25 (3d Cir. 2010).  However, *Gallimore* concerned interpretation of former Section 212(c) of the INA.  Like Section 212(h), Section 212(c) employed

10

the phrase "lawful permanent resident," but without the crucial modifying language of "previously been admitted . . . as." *See De La Rosa v. DHS*, 489 F.3d 551, 554-55 (2d Cir. 2007); *Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1317 (11th Cir. 2006); *Arellano-Garcia v. Gonzales*, 429 F.3d 1183, 1187 (8th Cir. 2005); *Monet v. INS*, 791 F.2d 752, 753-55 (9th Cir. 1986)*; Matter of Longstaff*, 716 F.2d 1439, 1441-42 (5th Cir. 1983)*.* Along the same lines, other circuits have isolated Section 212(c)'s "lawfully admitted for permanent residence" from the preceding language "previously been admitted," but those cases did not involve interpreting the fully expanded modifier: "previously been admitted…*__as__*" (emphasis added). *See Bracamontes*, 675 F.3d at 388; *Lanier v. Att'y Gen.*, 631 F.3d at 1366; *Martinez*, 519 F.3d at 546. In other words, the Fourth, Fifth and Eleventh Circuits focused on the word "lawfully" in defining "admission." We, on the other hand, agree with the Ninth Circuit that the controlling phrase here is not "lawfully admitted for permanent residence," but rather the preceding phrase, "previously been admitted to the United States . . . as." *Hing Sum*, 602 F.3d 1092, 1097 (distinguishing *Martinez*).[7]

Only one federal appellate court has confronted precisely the same issue that Martinez now raises. In *Hing Sum*, the petitioner was arrested and allegedly convicted for a state law violation three years before being admitted to the United States as an LPR. Ten years after his admission, he was convicted on federal counterfeiting conspiracy charges, and the government commenced removal proceedings based on this latter conviction. Like Martinez, Sum sought a waiver under Section 212(h), "arguing that he was not subject to the bar on § 212(h) relief because he was actually inadmissible at the time he obtained LPR status either because of his 1987 conviction or because of his failure to disclose that conviction when he entered as an LPR in 1990." *Id.* at 1094 (footnote omitted).

---

[7] *Bracamontes*, *Lanier*, and *Martinez* are further distinguishable from the instant case in that the petitioners in those cases were not granted LPR status until they were already physically present in the United States. *See Bracamontes*, 675 F.3d at 382; *Lanier*, 631 F.3d at 1365; *Martinez*, 519 F.3d at 536.

11

*Hing Sum*, in turn, cites *Ayala* with approval.[8] In *Ayala*, the BIA rejected the petitioner's argument—identical to Martinez's position here—that the waiver bar did not apply to him:

> While the language of section 212(h) distinguishes those who have been previously admitted for permanent residence from those who have not . . . , the statute does not, either expressly or by implication, distinguish those whose admission was lawful and those were who were previously admitted for lawful permanent residence but are subsequently determined to have been admitted in violation of the law. To read such a distinction into the statute would be arbitrary and capricious.

*Ayala*, 22 I & N at 401. Indeed, to find otherwise would be to focus on the statutory language of "lawfully admitted" to the complete exclusion of "previously been admitted . . . as." *Id.* The *Hing Sum* court noted that "Ayala's criminal activity at the time of admission did not alter 'the historical fact that, when he entered, it was in the status of a lawful permanent resident.'" *Hing Sum*, 602 F.3d at 1098 (quoting *Ayala*, 22 I & N at 401). According to the Ninth Circuit, "[t]he same reasoning applies to Sum." *Hing Sum*, 602 F.3d at 1098.

We agree and apply that reasoning to Martinez here. When the definition of "admitted" is considered in the context of the Section 212(h) waiver bar, the statutory imperative to define admission in terms of procedural regularity, as opposed to substantive satisfaction, is clear. "[P]reviously admitted…**as** an alien lawfully admitted for permanent residence" must be read as one phrase; to read the "lawfully admitted" portion in isolation would render "previously

---

[8] The First, Fourth and Eleventh Circuits have also approved of *Ayala*, albeit in different contexts. *See Onwuamaegbu v. Gonzales*, 470 F.3d 405, 408-09 (1st Cir. 2006); *Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1315 (11th Cir. 2006); *Obioha v. Gonzales*, 431 F.3d 400, 409 n.10 (4th Cir. 2005).

admitted as" superfluous. "If Congress intended § 212(h) to bar only 'alien[s] lawfully admitted for permanent residence,' there would be no need to describe those non-citizens as also 'previously . . . admitted to the United States.'" *Hing Sum*, 602 F.3d at 1097 (quoting *Onwuamaegbu v. Gonzales*, 470 F.3d 405, 409 (1st Cir. 2006); citing *Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1062 (9th Cir. 2008)).

Additionally, to adopt Martinez's proposed substantive reading of the statute would fly in the face of Section 212(h)'s evident intent. "By using the term 'previously admitted,' rather than (for example) 'previously and lawfully admitted,' Congress demonstrated that it specifically intended to penalize those immigrants who sought and gained LPR status only to abuse its benefits." *Onwuamaegbu*, 470 F.3d at 409; *accord Taniguchi v. Schultz*, 303 F.3d 950, 958 (9th Cir. 2002) (finding rational basis for denying Section 212(h) waivers to non-citizens convicted of aggravated felony after admission as LPRs; because LPRs "enjoy substantial rights and privileges not shared by other aliens," they should be held to a "higher standard and level of responsibility than non-LPRs"). Indeed, to conclude otherwise would undermine the IIRIRA's stated purpose. *See Bamba v. Riley*, 366 F.3d 195, 202-03 (3d Cir. 2004) (INA "evince[s] a broad Congressional intent to expedite the removal of criminal aliens"); *Zhang v. I.N.S.*, 274 F.3d 103, 108 (2d Cir. 2001) ("[I]t is beyond cavil that one of Congress's principal goals in enacting IIRIRA was to expedite the removal of aliens who have been convicted of aggravated felonies.").[9] Like the Ninth Circuit, we can discern "no reason why Congress would give a pass to non-

---

[9] Martinez, for his part, argues that it is our reading of Section 212(h) that would lead to "perverse results when applied to other federal statutes," such as legislation relating to an alien's eligibility for public benefits such as food stamps or supplemental security income. Brief for Petitioner at 25. However, the statutes suggested by Martinez are not part of the INA and therefore not administered by the BIA; accordingly, the BIA's construction of Section 212(h)'s statutory language is irrelevant as to benefits eligibility. *See* 8 U.S.C. §§ 1101-1537; 42 U.S.C. §§ 1381 *et seq.*; 7 U.S.C. §§ 2013, 2020.

citizens who had fraudulently obtained LPR status while barring from relief non-citizens who had legitimately obtained LPR status." *Hing Sum*, 602 F.3d at 1097 (citation omitted); *see United States v. Wilson*, 503, U.S. 329, 334 (1992) (citing *United States v. Turkette*, 452 U.S. 576, 580 (1981) (when interpreting statutes, "absurd results are to be avoided")).[10]

## IV.    Conclusion

Section 212(h)'s statutory language, construction, and evolution make clear that "admission" and "admitted" refer, as in the INA's definition, to inspection and authorization by any immigration officer at the port of entry. *See* 8 U.S.C. § 1101(a)(13)(A). As Martinez was admitted following such procedures, after failing to disclose his arrest and subsequent conviction for an aggravated felony, the Section 212(h) waiver bar applies. For these reasons, we deny the petition for review.

_____

_____

[10] Despite clearly "absurd results," other circuits have concluded that Congress may have had rational reasons for employing statutory language that, in the eyes of those circuits, unambiguously excepted aggravated felons convicted post-LPR admission from the waiver bar. *See Bracamontes*, 675 F.3d at 388; *Martinez*, 519 F.3d at 545. However, as discussed above, those circuits considered the import of the phrase "previously been admitted" but not in its complete modifying context of "previously been admitted…*as*." *See supra,* at 11-12.

14